
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 18, 2017 Session

## TAMALA TEAGUE, ET AL. v. GARNETTE KIDD, ET AL.

**Appeal from the Chancery Court for Polk County**
**No. 2013-CV-18     Jerri Bryant, Chancellor**

—————————————————————

**No. E2016-01995-COA-R3-CV**

—————————————————————

In this fraudulent conveyance action, a trial by jury resulted in judgment for decedent's estate against defendants. Defendants filed a motion for a new trial asserting that: (1) the trial court erred in failing to grant a mistrial after counsel for decedent's estate made a comment about one of the defendant's credibility from "past cases" purportedly in the presence of the jury; and (2) no evidence supports the jury verdict. The trial court denied the post-trial motion and affirmed the jury verdict. Defendants appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which CHARLES D. SUSANO, and THOMAS R. FRIERSON, II, JJ, joined.

William J. Brown, Cleveland, Tennessee, for the appellants, Garnette Kidd, and William Kidd.

Andy D. Lewis, Chattanooga, Tennessee and R. Prince Miller, Jr., Cleveland, Tennessee, for the appellee, Tamala Teague.

## OPINION

### BACKGROUND

This is the second case involving the same parties. In ***Teague v. Kidd***, No. E2011-02363-COA-R3-CV, 2012 WL 5869637 (Tenn. Ct. App. Nov. 21, 2012) ("***Teague I***"), the Administrator of Lola Lee Duggan's ("Decedent") estate sued Garnette Kidd ("Ms. Kidd"), Decedent's daughter and her attorney-in-fact, and William Kidd ("Mr. Kidd," or, together with Ms. Kidd, "Appellants"), Ms. Kidd's husband, in February 2009 in the Polk

County Chancery Court for breach of fiduciary duty and misappropriation of Decedent's funds. While the litigation was pending, the Administrator died, and Plaintiff/Appellee Tamala Teague ("Appellee") subsequently replaced the Administrator as successor personal representative for Decedent's estate. After a bench trial, the trial court entered judgment against Appellants in the amount of $267,305.31. On appeal, this Court affirmed liability with respect to Ms. Kidd but reversed the trial court's finding with respect to Mr. Kidd because Mr. Kidd did not owe a fiduciary duty to Decedent. As a result, this Court, after appropriate credits, modified the judgment amount to $196,731.48,[1] the total owed by Ms. Kidd individually.

During the pendency of *Teague I*, on October 29, 2009, before judgment had been obtained, Ms. Kidd combined an individual certificate of deposit ("CD") owned solely by her in the amount of $46,817.55 with a CD owned by Mr. Kidd in the amount of $50,999.76, to create a single new joint CD in the amount of $97,853.25 with right of survivorship, at the Peoples Bank of East Tennessee ("the bank"). After *Teague I* was finalized on April 30, 2013, Appellee filed the instant suit in the trial court against Appellants on the same day, alleging fraudulent conveyance pursuant to the Uniform Fraudulent Transfer Act ("UFTA"), Tennessee Code Annotated sections 36-3-301 *et seq.*, based on Appellants' act of combining their individual CDs, and seeking to set aside the consolidation. The complaint alleged that Appellee, as judgment creditor, could not recover Ms. Kidd's funds that had been commingled because the funds were purportedly held as a joint account with right of survivorship. Appellee, by affidavit, also requested that a temporary restraining order be issued in order to enjoin Appellants from dissipating the assets in their jointly-owned CD pending further hearing. As a result, the trial court issued a temporary injunction on May 3, 2013, enjoining Appellants from "dissipate[ing], spend[ing], or liquidat[ing] [the jointly-owned CD] in [the bank]." Appellants thereafter filed an answer, denying all material allegations, and a motion to dissolve the temporary restraining order. The trial court subsequently denied the motion to dissolve the temporary restraining order.

Additional contentious filings ensued prior to the trial in the instant case. For one, Appellee noticed a deposition for Ms. Kidd and Mr. Kidd. According to Appellants' brief, Appellants filed two motions to quash the deposition for Ms. Kidd, citing her mental conditions and presented an affidavit and deposition of Ms. Kidd's psychiatrist. The trial court entered an order on April 12, 2016, finding that Ms. Kidd "would suffer psychiatric harm if she was required to testify either at a deposition or at trial." Because the trial court could not require Ms. Kidd to testify at a deposition, the trial court provided as a sanction that Ms. Kidd would not be allowed to testify at trial. As a result, Ms. Kidd neither attended nor testified at trial.

---

[1] This total includes the amount of damages of $117,679.00 plus pre-judgment interest through the date of the judgment of this Court in the amount of $79,052.48.

- 2 -

On April 12 and 13, 2016, this case was tried before a jury. During opening statements, counsel for Appellee made the following statement:

This case has a long history. For one thing, you're not going to he[ar] from Ms. Kidd today. This case, a lot of it boils down to credibility. You're not going to be able to see or hear Ms. Kidd in this case.

We have Mr. Kidd, who is here. In previous cases, he's been found to not be credible.

Appellant's counsel objected and requested to approach the bench. The trial transcript indicates that "a bench conference was had out of the hearing of the jury[.]" During the conference, Appellants requested a mistrial. Appellee's counsel responded with: "Give him the mistrial. I don't think it is." The trial court, however, denied the motion. No curative instruction was requested.

During Appellee's case-in-chief, a representative at the bank, Cindy Prince, and Mr. Kidd testified, but Ms. Kidd neither appeared at trial nor testified. Ms. Prince testified that in her role as branch manager at the bank, she was responsible for helping customers open new accounts and managing CDs for the bank's customers. According to Ms. Prince, she had long time contact with Ms. Kidd as a customer and generally remembered helping her with her banking transactions, such a helping Ms. Kidd open a CD account. Ms. Prince explained that the bank sends out annual statements of interest paid by the bank to the customer by way of a 1099 form. Ms. Prince identified 1099 forms for the years 2007 through 2009 that were sent to Ms. Kidd, and these were introduced into evidence.

Ms. Prince also identified a CD in both Appellants' names dated October 29, 2009. Ms. Prince testified that the CD was jointly owned by Appellants and was marked as "joint with survivorship," meaning that either Mr. or Ms. Kidd could do whatever they wanted with the CD. Although Ms. Prince acknowledged that her signature was on the CD as the bank representative, she had no independent recollection of the transaction or any comments made during the process of executing the CD with Appellants. Appellee also introduced a document with the word "PAID" across the top, which Ms. Prince identified as a CD that Ms. Kidd purchased in August 20, 1996, designating Mr. Kidd as a beneficiary, and which was "cashed out and paid out" to her.[2] On cross-examination, Ms. Prince testified that she never discussed the legal consequences or protections afforded to the customers by their decision to combine individual CDs.

According to Mr. Kidd, between February 2009, when the first lawsuit was filed, and April 21, 2011, the entry of the judgment in the first case prior to the remand from

---

[2] Although the transcript of the testimony indicates that Ms. Kidd purchased the CD on August 20, 1996, the document shows a date of August 30, 1996.

- 3 -

the Court of Appeals, he understood that both he and Ms. Kidd were at risk to have a judgment rendered against them, and, in fact, a judgment was subsequently rendered against them. Mr. Kidd identified the temporary restraining order entered in October 2010 that enjoined both Appellants from disposing of any property, including any financial accounts and certificates of deposits. Mr. Kidd testified that neither he nor Ms. Kidd had any legal education and that he knew nothing about protections afforded a married couple by having jointly owned property. Mr. Kidd denied having any knowledge that a jointly owned CD could be protected if only one of the parties had a judgment against them.

Mr. Kidd further testified that Appellants combined their CDs for "convenience" so that they would receive "one 1099 instead of two." When asked whether he received any 1099s, Mr. Kidd replied "I don't know." Mr. Kidd also testified that Appellants designated Ms. Kidd's nephew, with whom Appellants had a close relationship, as the beneficiary on the jointly-owned CD. Mr. Kidd introduced a copy of a recorded deed of trust that secured the earlier amended judgment from *Teague I* against Ms. Kidd in the amount of $267,305.31 to show that Appellants were not rendered insolvent as a result of the consolidation.

At the end of the trial, Appellee acknowledged that no evidence of insolvency was presented and dismissed all of her claims against Appellants with the exception of the "actual intent" fraud claim pursuant to T.C.A. § 66-3-305(a) based on Appellants' consolidation of their individual CDs.

The case was submitted to the jury. The jury was presented with a single question: "On October 29, 2009, did [Ms. Kidd] transfer her [CD] and combine it with [Mr. Kidd's CD] to create the joint [CD] at [the bank] with actual intent to hinder, delay, or defraud the [Decedent's estate]?" After deliberations, the jury returned with a verdict of "Yes." The trial court entered a judgment on the verdict on May 18, 2016. On June 15, 2016, Appellants filed a motion for a new trial on the following bases: (1) that the verdict was contrary to the weight of the evidence; and (2) that the trial court's action in allowing Appellee's statement to be admitted in opening statement regarding Mr. Kidd's credibility constituted an "improper comment by the [trial] court on the evidence."

By order of September 12, 2016, the trial court noted that the jury heard Mr. Kidd's testimony, which included several inconsistent statements, and therefore was able to judge his credibility. In addition, based on Ms. Kidd's failure to testify and absence from trial, the trial court stated that the jury was allowed to conclude that her testimony would have been adverse to her. As such, the trial court found that the verdict was supported by the weight of the evidence. The trial court also found that, although counsel for Appellee made a reference to Mr. Kidd's credibility in the first case during opening statement: (1) the issue was not argued during closing; (2) no proof was put on regarding Mr. Kidd's credibility in the first case during the course of the trial for the instant case;

- 4 -

(3) the jury instructions admonishing the jury—that it was the sole judge as to credibility, that it was the sole finder of fact, that it was to look at only the evidence in this case, and that statements made by counsel were not evidence—were sufficient to negate any issue concerning the opening statement. Accordingly, the trial court denied Appellants' motion for a new trial. This appeal followed.

## ISSUES

Appellants raise the following issues for our review, which we have slightly restated and reordered as follows:

1. Did the trial court commit reversible error by permitting the Appellee's counsel to state to the jury in opening statement that the trial court had previously found Mr. Kidd to not be credible and denying a mistrial or providing curative instruction?
2. Was there sufficient material evidence presented to the jury to justify its finding that Appellants acted with fraudulent intent to hinder, delay or defraud the Appellee from collecting on a judgment against Ms. Kidd through the consolidation of her CD with Mr. Kidd?

## DISCUSSION

### Denial of Mistrial Based on Comments Regarding Mr. Kidd's Credibility During Opening Statement

Appellants first take issue with the trial court's decision to overrule Appellants' objection to Appellee's opening statement discussing Mr. Kidd's credibility in "past cases." According to Appellants, the trial court's ruling within the hearing of the jury constituted an improper "comment" by the trial court. As a result, Appellants assert that the trial court erred by refusing to grant Appellants a mistrial on this basis. Whether to grant a mistrial is a decision left to the discretion of the trial court. *Hunter v. Ura*, 163 S.W.3d 686, 699 (Tenn. 2005) (citing *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003); *see also McCullough v. Johnson City Emergency Physicians*, P.C., 106 S.W.3d 36, 47 (Tenn. Ct. App. 2002)). "We should not reverse for 'abuse of discretion' a discretionary judgment of a [t]rial [c]ourt unless it affirmatively appears that the [t]rial [c]ourt's decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *McCullough*, 106 S.W.3d at 47–48 (citing *Marcus v. Marcus*, 993 S.W.2d 596 (Tenn. 1999)); *see also* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). "Additionally, the burden of establishing the necessity for mistrial lies with the party seeking it." *State v. Moss*, No. M2014-00746-CCA-R3-CD, 2016 WL 5253209, at *24

(Tenn. Crim. App. Sept. 21, 2016), *app. denied*, (Tenn. Jan. 19, 2017) (citing **State v. Williams**, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)).

During Appellee's opening statement, counsel for Appellee stated that Mr. Kidd had been found in "past cases" to not be credible and Appellants immediately objected and sought a mistrial. The trial court ruled that it would "deny the motion" for a mistrial and "allow [Appellee] to keep that [comment] in, the previous findings of this court." Based on this exchange, Appellants argue that, because the trial court "permitt[ed]" Appellee to address in opening statement regarding Mr. Kidd's lack of credibility in "past cases," the trial judge violated the Tennessee Constitution's prohibition against commenting on the credibility of the witnesses. According to the Tennessee Supreme Court:

> Judges are prohibited from commenting upon the credibility of witnesses or upon the evidence in a case. *See* Tenn. Const. art. VI, § 9 (stating that "[t]he judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law"). Therefore, trial judges must be "very careful not to give the jury any impression as to his [or her] feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." **State v. Suttles**, 767 S.W.2d 403, 407 (Tenn. 1989); *see also* **Kanbi v. Sousa**, 26 S.W.3d 495, 498–99 (Tenn. Ct. App. 2000). These restrictions apply to comments made when ruling on an objection. **Loeffler v. Kjellgren**, 884 S.W.2d 463, 474 (Tenn. Ct. App. 1994).

> Even though judges need to be circumspect in this area, not every comment on the evidence made by a judge is grounds for a new trial. **Kanbi**, 26 S.W.3d at 499. We must consider the trial court's comment in the overall context of the case to determine whether the comment was prejudicial. **State v. Caughron**, 855 S.W.2d 526, 536–37 (Tenn. 1993).

**Mercer v. Vanderbilt Univ., Inc.**, 134 S.W.3d 121, 134 (Tenn. 2004).

Here, there is no dispute that the allegedly improper comment was made by Appellee, not the trial judge. Appellants argue, however, that "the fact that the trial court overruled the objection in the presence of the jury[] constitutes a comment on the credibility of the witnesses." Respectfully, we cannot agree. Generally, a trial court's mere ruling on an evidentiary issue, without more, does not constitute an improper affirmative comment on the underlying matter. *See Webster's New World College Dictionary* 299 (5th ed. 2014) (defining a "comment" as "a remark or observation made in criticism or as an expression of opinion"). The trial court here merely "den[ied] the motion" for a mistrial and "allow[ed] [Appellee] to keep that [comment] in, the previous findings of this court." From our review, the trial court did not express an opinion on the

weight that the jury should give to this statement. *See* **State v. Birdwell**, No. M2008-02313-CCA-R3-CD, 2010 WL 2977891, at \*8 (Tenn. Crim. App. July 29, 2010) ("The trial court's comment . . . was not directed to the weight or credibility of the evidence but on its relevancy and was not improper in the context in which it was made."); **State v. Myrick**, No. W2008-02190-CCA-R3-CD, 2010 WL 2695542, at \*11 (Tenn. Crim. App. July 7, 2010) "[Because] the trial court's comments did not reflect on the weight or credibility of the evidence[,] . . . the defendant's argument is without merit."). If we were to adopt Appellants' interpretation that the trial court's ruling in this case constituted an improper comment by the trial court, then every trial judge who has made an evidentiary ruling in the presence of a jury arguably violated the Tennessee Constitution, because, following Appellants' logic, the trial court would have "impose[d] its] thumbprint" on whatever ruling it made even if no comment accompanied the ruling.

Even assuming arguendo that the trial court's ruling on the objection in this case constitutes an improper "comment" by the trial court, we conclude that the trial court's action does not rise to the level of prejudice that would require the granting of a mistrial. *See* **Volner v. Vantreese Disc. Pharmacy, Inc.**, No. 02A01-9712-GS-00298, 1999 WL 350899, at \*2 (Tenn. Ct. App. May 28, 1999) (quoting **Doochin v. U.S. Fidelity & Guar. Co.**, 854 S.W.2d 109, 116 (Tenn. Ct. App. 1993)) ("[A]ppellate courts will not review the action of the trial court in refusing to grant . . . a new trial based upon improper argument of counsel 'unless the argument is clearly unwarranted and made purely for the purpose of appealing to passion, prejudices and sentiment, which cannot be removed by the trial judge's sustaining the objection of opposing counsel, or unless we affirmatively find that such argument affects the results of the trial.'"). We first dispose of Appellants' contention that the trial court's overruling of Appellants' objection during the bench conference was improperly made in the presence of the jury. Our review of the transcript indicates that, after the objection was made by counsel for Appellants, "a bench conference was had out of the hearing of the jury." When asked at oral argument whether anything in the transcript or in the record supports Appellants' contention that the jury were able to hear the trial court's ruling, counsel for Appellants was unable to provide a direct answer. Indeed, nothing in the record suggests that Appellants were dissatisfied at trial with the fact that the jury allegedly heard the bench conference, nor did Appellants provide any evidence to support their assertion that the bench conference at issue was actually heard by the jury. It is also important to note that Appellants failed to request that the trial judge deliver any curative instruction[3] to the jury, such as: (1) instructing the

---

[3] Although Appellants also raise as an issue the trial court's failure to provide a curative instruction, it is unclear what the substance of the curative instruction would have been based on the fact that Appellants never requested one at trial and did not argue the issue in the body of their brief. It is well-settled that "a party [who] fails to request a curative instruction . . . effectively waives the issue for appellate purposes." **State v. Griffis**, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997); *see also* **Hodge v. Craig**, 382 S.W.3d 325, 335 (Tenn. 2012) (citing **Baugh v. Novak**, 340 S.W.3d 372, 381 (Tenn. 2011) ("An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)."). Moreover,

jury to disregard any arguments that they might have heard during the bench conference; or (2) instructing the jury that anything said by counsel during opening statements are not to be considered as evidence.

Further, although not cited by either party, we find the reasoning in *State v. Barnett*, No. 240, 1987 WL 13451 (Tenn. Crim. App. July 8, 1987), to be helpful. In that case, the defendant, who was convicted of three counts of aggravated sexual battery, argued that the trial court erred in denying his motion for mistrial based on the state's allegedly improper comments during opening statements referencing defendant's demand for fellatio from his wife. *Id.* at *1–3. According to defendant, this statement was inadmissible as evidence of another crime. *Id.* at *3. The Tennessee Court of Criminal Appeals held, however, that the statements were harmless in light of the following circumstances:

> There was no testimony or other evidence at trial that the defendant asked [his wife] to perform any act of fellatio. The only reference to this was made by the state in its opening statement. It is well settled that opening statements and closing arguments made by counsel are not to be considered evidence. *See* T.P.I.-Crim. 1.07. In his brief the defendant says that the trial judge told the state not to mention fellatio again.
>
> As the state's comments do not constitute evidence, and no proof of the substance of the comments was put on at trial, we conclude that, although improper, the comments made by the state in its opening statement were harmless. T.R.A.P. 36(b). Substantial evidence existed to prove the defendant's guilt.

*Id.*

We likewise conclude that the comment made by Appellee's counsel, even if improper, was harmless and did not prejudice the jury. First, as conceded by Appellants and acknowledged by the trial court in its order denying Appellants' motion for a new trial, no proof was introduced during trial about any findings with respect to Mr. Kidd's credibility. Although Appellants take issue with Appellee's comment made during opening statements, it is well-settled that "[o]pening statements are not stipulations or evidence." *State v. Gayden*, No. W2011-00378-CCA-R3-CD, 2012 WL 5233638, at *9 (Tenn. Crim. App. Oct. 23, 2012) (citing *Harris*, 574 S.W.2d at 732); *see also Mohr v.*

---

Appellants did not raise the curative instruction issue in their motion for a new trial. *McMillin v. McMillin*, No. E2014-00497-COA-R3-CV, 2015 WL 1510766, at *7 (Tenn. Ct. App. Mar. 31, 2015), *app. denied* (Tenn. July 23, 2015) ("Due to th[e] omission [of issues from the motion for a new trial], this Court cannot consider the[ omitted] issues on appeal."). Based on Appellants' lack of diligence in reserving this issue, Appellants cannot now raise the trial court's failure to provide a curative instruction on appeal.

*DaimlerChrysler Corp.*, No. W2006-01382-COA-R3-CV, 2008 WL 4613584, at *20 (Tenn. Ct. App. Oct. 14, 2008) ("Although we concede that [p]laintiffs' counsel should not have vouched for the credibility of its witnesses, the jury was instructed that findings of credibility of witnesses are left to the jury, and that arguments made by counsel are not proof."). "Opening statements 'are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove.'" *Gayden*, 2012 WL 5233638, at *9 (quoting *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 732 (Tenn. 1978)). Furthermore, we note that, after the trial court sustained Appellants' objection to the introduction of any facts from *Teague I* based on relevancy, no proof of the underlying facts from *Teague I* or Mr. Kidd's credibility during that trial was introduced. As such, we fail to see how a single comment made during opening statement, even if improper, and after which no other references to the comment were made during the course of trial, affected the jury's verdict.

Second, at the end of the proof, the trial court properly admonished the jury concerning its role and function as the trier of fact in this case, as follows in relevant part:

> You are the sole and exclusive judges of the credibility or believability of a witness who has testified in this case. You must decide which witnesses you believe and how important you think their testimony is. You are not required to accept or reject everything a witness says. You are free to believe all, none, or part of a person's testimony.
>
> * * *
>
> In reaching your verdict, you may only consider evidence that was admitted. Remember that any questions, objections, statements[,] or arguments made by the attorneys during the trial are not evidence. . . .
>
> * * *
>
> I will remind you that you are to decide this case based on the evidence you have heard in court and the law I have given you. You are prohibited from considering any other information and you are not to consult any outside sources. . . .

"On appellate review, we must presume that the jury has followed [the trial court's] instruction." *Payne v. CSX Transp.*, Inc., 467 S.W.3d 413, 443 (Tenn. 2015) (citing *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 375 (Tenn. 2006)). "A verdict is not overturned on appeal on this basis unless, 'considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.'" *Marshall v. Cintas Corp.*, 255 S.W.3d 60, 75 (Tenn. Ct. App. 2007) (quoting Tenn. R. App. P. 36(b)). Here, we must presume that the jury followed the trial court's instruction that they are the "sole and exclusive judges" of

the case and to consider the evidence rather than statements and arguments made by the attorneys. Appellants have not presented any evidence to rebut this presumption.

Finally, as discussed *infra*, material evidence exists to support the jury's verdict. Under all of these circumstances, we conclude that no prejudicial effect resulted from the trial court's ruling, and the trial court therefore did not abuse its discretion in denying Appellants a mistrial on this basis.

### Material Evidence to Support the Jury's Verdict

"It is well established that once a trial court has approved a jury verdict, the standard to be applied on appeal to review the jury verdict is stringent[.]" ***Shropshire v. Roach***, No. M2007-02593-COA-R3-CV, 2009 WL 230236, at *3 (Tenn. Ct. App. Jan. 30, 2009). The Tennessee Supreme Court has articulated the standard that appellate courts must apply when a jury verdict is challenged:

> An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict. Tenn. R. App. P. 13(d); ***Whaley v. Perkins***, 197 S.W.3d 665, 671 (Tenn. 2006). In determining whether there is material evidence to support a verdict, we shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." ***Barnes v. Goodyear Tire & Rubber Co.***, 48 S.W.3d 698, 704 (Tenn. 2000) (citing ***Crabtree Masonry Co. v. C & R Constr., Inc.***, 575 S.W.2d 4, 5 (Tenn. 1978)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." ***Barnes***, 48 S.W.3d at 704.

***Creech v. Addington***, 281 S.W.3d 363, 372 (Tenn. 2009). Our Supreme Court has further provided:

> Where the trial judge has approved the verdict in its role as thirteenth juror—as the trial court did in this case—the Court of Appeals' review of the verdict . . . is limited to a review of the record to determine whether the verdict is supported by material evidence. ***Poole v. Kroger Co.***, 604 S.W.2d 52, 54 (Tenn. 1980)[.] . . . Material evidence is "evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." ***Knoxville Traction Co. v. Brown***, 115 Tenn. 323, 331, 89 S.W. 319, 321 (1905). . . . The material evidence analysis is very deferential to the award by the jury and the judgment of the trial court when it affirms the verdict as the thirteenth juror. "It matters not a whit

where the weight or preponderance of the evidence lies under a material evidence review." *Hohenberg Bros. Co. v. Mo. Pac. R.R. Co.*, 586 S.W.2d 117, 119–20 (Tenn. Ct. App. 1979). "It is simply a search of the record to ascertain if material evidence is present to support the verdict." *Id.* Because the material evidence standard lies at the foundation of the right to trial by jury, if there is material evidence to support a jury verdict, the appellate courts must affirm it. *See* Tenn. Const. art. I, § 6; *Truan v. Smith*, 578 S.W.2d 73, 74 (Tenn. 1979) (quoting *D.M. Rose & Co. v. Snyder*, 185 Tenn. 499, 508, 206 S.W.2d 897, 901 (1947)); *Crabtree Masonry Co.*, 575 S.W.2d at 5; *City of Chattanooga v. Ballew*, 49 Tenn. App. 310, 316–17, 354 S.W.2d 806, 808–09 (Tenn. App. 1961); *see also Grandstaff v. Hawks*, 36 S.W.3d 482, 497 (Tenn. Ct. App. 2000) ("We have a duty to uphold a jury's verdict whenever possible.").

*Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422–23 (Tenn. 2013) (some internal citations omitted).

In this case, the jury returned a verdict finding that Ms. Kidd "transfer[red] her [CD] and combine[d] it with [Mr. Kidd's CD] to create the joint [CD] at the [bank] with actual intent to hinder, delay, or defraud the Estate of Lola Lee Duggan." Appellants argue, however, no material evidence was presented to the jury to support its finding that Appellants' action in consolidating their CDs into one was taken with actual intent to hinder, delay, or defraud Appellee from collecting a prospective judgment. We begin our analysis with a review of the statutory requirements for establishing a claim for a fraudulent conveyance.

In Tennessee, the UFTA is codified at Tennessee Code Annotated sections 66-3-301 to 66-3-313. The type of fraudulent transfer at issue in this case involves actual fraud found at Tennessee Code Annotated section 66-3-305(a)(1), which provides, in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Tenn. Code Ann. § 66-3-305(a)(1). To determine actual intent under section 66-3-305(a)(1), Tennessee Code Annotated section 66-3-305(b) describes a nonexclusive list of factors that the fact-finder may consider:

(b) In determining actual intent under subdivision (a)(1), consideration may be given, among other factors, to whether:

(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tenn. Code Ann. § 66-3-305(b). These statutory factors resemble the traditional "badges of fraud," which Tennessee courts have identified as follows:

1. The transferor is in a precarious financial condition.
2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.
3. Inadequate consideration was given for the transfer.
4. Secrecy or haste existed in carrying out the transfer.
5. A family or friendship relationship existed between the transferor and the transferee(s).
6. The transfer included all or substantially all of the transfer[or]'s nonexempt property.
7. The transferor retained a life estate or other interest in the property transferred.
8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction.
9. There is a lack of innocent purpose or use for the transfer.

*Stoner v. Amburn*, No. E2012-00075-COA-R3-CV, 2012 WL 4473306, at *9 (Tenn. Ct. App. Sept. 28, 2012) (quoting *Nadler v. Mountain Valley Chapel Bus. Trust*, No. E2003-00848-COA- R3-CV, 2004 WL 1488544, at *2 (Tenn. Ct. App. June 30, 2004)).

Although courts differ on whether to distinguish the statutory factors from the traditional "badges of fraud" or to treat them synonymously, *compare **Stoner***, 2012 WL 4473306, at *8 ("In addition to . . . statutory factors, circumstantial evidence may come in the form of "badges of fraud"—circumstantial indicators used by the courts to perceive a debtor's intent for fraudulent transfer purposes."), *with **In re Estate of Ralston***, No. M2012-00597-COA-R3-CV, 2013 WL 1804291, at *6 (Tenn. Ct. App. Apr. 29, 2013) ("The court then went on to analyze those facts in light of the 'badges of fraud' set out in Tenn. Code Ann. § 66-3-305(b)."), this Court has described a badge of fraud as "any fact that throws suspicion on the transaction and calls for an explanation." ***Macon Bank & Trust Co. v. Holland***, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986). "The plaintiff alleging fraud has the initial burden of proving the defendant made a transfer that was fraudulent." ***Delta Gypsum, LLC v. Michael Felgemacher***, No. E2016-01447-COA-R3-CV, 2017 WL 1505612, at *2 (Tenn. Ct. App. Apr. 26, 2017) (citing ***Stoner***, 2012 WL 4473306, at *8). Because the non-exclusive list of statutory factors closely resembles the traditional "badges of fraud," and the parties referred to the statutory factors as the "badges of fraud," we will therefore treat them synonymously in this Opinion.

Appellants argue that no "positive evidence" exists in the record that Appellants "ever made any statements that they acted with 'actual intent to hinder, delay[,] or defraud" Appellee's ability to collect a prospective judgment, and, as a result, only circumstantial evidence could support the jury's verdict. As we perceive it, Appellants seem to be arguing that Appellee could only win if Mr. or Ms. Kidd explicitly admitted that they acted with fraudulent intent. Respectfully, we disagree. "A determination of whether a conveyance is fraudulent depends upon the facts and circumstances of each case." ***In re Estate of Ralston***, 2013 WL 1804291, at *6 (citing ***Macon Bank & Trust Co.***, 715 S.W.2d at 349). "Fraudulent transferors rarely disclose their intent in a way that is capable of direct evidence, so persons seeking to set aside a fraudulent transfer must frequently resort to circumstantial evidence." ***Id.*** (citing ***McConnico v. Third Nat'l Bank***, 499 S.W.2d 874, 887 (Tenn. 1973)); *see also **Delta Gypsum, LLC***, 2017 WL 1505612, at *2 ("Fraud is often established by way of circumstantial evidence because direct evidence of fraud is not often available."). "Where the circumstances of a transfer of property by a debtor are suspicious, the failure of the parties to testify or to produce available explanation or rebutting evidence is a badge of fraud." ***Macon Bank & Trust Co.***, 715 S.W.2d at 349 (citing ***Union Bank v. Chaffin***, 147 S.W.2d 414 (Tenn. Ct. App. 1940)).

Here, Appellants do not dispute that Ms. Kidd consolidated her CD with her husband, an "insider."[4] *See* Tenn. Code Ann. § 66-3-305(b)(1) ("The transfer . . . was to an insider[.]"). Rather, Appellants argue that Appellee had the burden of showing more

---

[4] An "insider" pursuant to statute includes the debtor's spouse. *See* Tenn. Code Ann. § 66-3-302(7)(A)(i) (defining "insider" "a relative of the debtor"); Tenn. Code Ann. § 66-3-302(11) (including in the definition of "relative" as "a spouse").

- 13 -

than that a transfer was made to an insider. The weight to be given to any of these badges is a question for the fact-finder. **Macon Bank & Trust Co.**, 715 S.W.2d at 349–50. "If the plaintiff is able to prove the existence of **one or more of the statutory factors or badges of fraud**, a presumption of fraud arises and the burden then shifts to the defendant to disprove his or her fraudulent intent." **Delta Gypsum, LLC**, 2017 WL 1505612, at *3 (citing **Stoner**, 2012 WL 4473306, at *9) (emphasis added). Although only "one" statutory factor is required to raise a presumption of fraud, our review of the record indicates that at least two other statutory factors are present in this case. According to Ms. Prince's testimony, Appellants' consolidation of the CDs allowed "either [Mr. or Ms. Kidd to] come in and cash it out." *See* Tenn. Code Ann. § 66-3-305(b)(2) ("The debtor retained possession or control of the property transferred after the transfer[.]"). Furthermore, although Appellants argue that no evidence exists "to support [the fact] that [Appellants] were aware of the [first] lawsuit[,]" Mr. Kidd's own testimony revealed that he knew both he and Ms. Kidd were at risk to have a judgment against them when the first lawsuit was filed in February 2009, eight months prior to the consolidation.[5] *See* Tenn. Code Ann. § 66-3-305(b)(4) ("Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit[.]").

In addition to the statutory factors, the evidence presented that Ms. Kidd bought CDs as early as 1996 designating Mr. Kidd as a beneficiary but only waited until 2009 to create a joint CD with Mr. Kidd for "convenience" purposes, to us, constitutes a "fact that throws suspicion on the transaction and calls for an explanation." **Macon Bank & Trust Co.**, 715 S.W.2d at 349. As previously discussed, when the circumstances surrounding a transfer are suspicious, a party's failure to produce a credible explanation is a badge of fraud. *See **Macon Bank & Trust Co.***, 715 S.W.2d at 349. As such, the jury could infer another badge of fraud based on Mr. Kidd's failure to produce a credible explanation with respect to the purpose for Appellants' consolidation of their individual CDs. Based on the existence of these badges of fraud, we reject Appellants' contention that "no" evidence was presented that could support the jury verdict.

From our review of the record, the jury was presented with the following evidence: (1) that Appellants were sued in February 2009; (2) that Appellants subsequently consolidated their CDs in October 2009; (3) that either Mr. or Ms. Kidd could dispose of the funds in the CDs; and (4) that Ms. Kidd bought individual CDs as early as 1996 designating Mr. Kidd as a beneficiary.[6]

---

[5] We note that, at trial, Appellants conceded that this badge of fraud existed. On appeal, however, Appellants denied the existence of this badge of fraud, arguing that Appellee failed to prove that Appellants knew they were threatened with a lawsuit before the consolidation.

[6] Although the record is not clear as to whether Appellants were already married in 1996, the CD bought by Ms. Kidd in August 1996 was in the name of "GARNETTE KIDD POD WILLIAM B. KIDD." As such, it can be inferred that Appellants were already married at this point based on Ms. Kidd's last name and the fact that Mr. Kidd was named as a beneficiary, payable upon Ms. Kidd's death.

We concede that Appellants presented countervailing evidence suggesting: (1) that Appellants consolidated their CDs for "convenience" so that Appellants would only receive one 1099 instead of two separate ones; (2) that Appellants were unsophisticated individuals who did not know the legal effect of the consolidation; (3) that Appellants were not rendered insolvent after the consolidation, *see* Tenn. Code Ann. § 66-3-305(b)(9); (4) that the value Ms. Kidd transferred and received as a result of the consolidation were reasonably equivalent in value, *see* Tenn. Code Ann. § 66-3-305(b)(9); and (5) that Appellants did not know in 2009 that Mr. Kidd would be relieved from judgment in 2012. However, it is not our prerogative to re-weigh the evidence presented or assess the witnesses' credibility. The jury chose to discredit Mr. Kidd's attempt to rebut evidence of the suspicious circumstances surrounding the consolidation in this case. As previously discussed, the weight to be given to any of these badges is a question for the fact-finder. ***Macon Bank & Trust Co.***, 715 S.W.2d at 349–50. As such, taking the strongest legitimate view of all the evidence in favor of the verdict, assuming the truth of all evidence that supports the verdict, allowing all reasonable inferences to sustain the verdict, and discarding all countervailing evidence, as we must, we conclude that the record contains, at a minimum, material evidence to support the jury's verdict.

Under all of these circumstances, we conclude that material evidence supports the jury's verdict. Consequently, we affirm the jury's verdict.

### CONCLUSION

Based on the foregoing, we affirm (1) the Polk County Chancery Court's denial of Appellants' request for a mistrial and (2) the jury's verdict. Costs of this appeal are taxed to the Appellants, Garnette Kidd and William Kidd, and their surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

- 15 -